UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DESMOND AARON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:19-cv-04598-JPH-TAB |
| | ) |
| B. RUST Correctional officer, | ) |
| D. TEMPLE Correctional officer, | ) |
| C. COOPERIDER Lt., correctional officer, | ) |
| | ) |
| Defendants. | ) |

**Order Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Desmond Aaron, an inmate at Pendleton Correctional Facility ("PCF"), filed this civil rights action under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. Specifically, he alleges that defendants used excessive force against him in violation of the Eighth Amendment and that Correctional Officer Cooperider retaliated against him in violation of the First Amendment.

The defendants have moved for summary judgment arguing that Mr. Aaron failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the reasons explained below, the motion for summary judgment is **granted**.

**I.   Summary Judgment Standard**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing

1

that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.   Background

According to Mr. Aaron's complaint, on October 3, 2019, the defendants used excessive force against him by slamming his head on the floor and twisting or bending his wrists and ankles. Dkt. 2 at 6–7. He alleges that they jumped him when he failed to follow inconsistent directions. *Id.* at 8–9. Mr. Aaron received a conduct report for battery on the correctional officers. Dkt. 34 at 15. Mr. Aaron also alleges that Lt. Cooperider retaliated against him by refusing to provide Mr. Aaron meals and reading a healthcare request without permission and then writing a conduct report for its contents.

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("the Grievance Process") that provides offenders with an opportunity to attempt to resolve grievances before filing suit in federal court. Dkt. 29-1 at ¶ 6. Offenders receive documentation on the Grievance Process during orientation, and a copy of the Offender Grievance policy is available in the PCF law library. *Id.* at ¶¶ 21–22.

The Grievance Process in effect at the time of the incident consisted of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an

informal resolution; (2) a written appeal to the facility warden or the warden's designee; and (3) a written appeal to the IDOC Grievance Manager. *Id.* at ¶ 12. The offender must first try to resolve a problem informally by contacting an appropriate staff member prior to submitting a formal grievance and documenting his effort of the attempt (e.g., "To/From" correspondence, State Form 36935, "Request for Interview"). *Id.* at ¶ 11; dkt. 29-2 at 8–9. If he is unable to informally resolve the issue, he must file a grievance within ten business days of the incident. Dkt. 29-1 at ¶ 15. The Offender Grievance Specialist ("grievance specialist") screens the grievance and determines whether it should be accepted and logged or rejected. *Id.* at ¶ 16. The grievance specialist then returns an unacceptable form or provides a receipt for an accepted form. *Id.*

If the grievance specialist rejects the grievance, the offender has five business days to correct the issue. *Id.* at ¶ 36. If the offender is dissatisfied with the grievance response, he must file a grievance appeal to the warden or his designee within five business days of receiving the response. *Id.* at ¶ 17. If the offender disagrees with the warden/designee's response, he must complete State Form 45473, "Offender Grievance Appeal," and support the form with supporting documentation to the grievance specialist within five business days of the warden's response. *Id.* at ¶ 18. Exhaustion of administrative remedies requires offenders to properly complete each step of the Grievance Process. *Id.* at ¶ 13. This means that the offender must properly complete the appropriate grievance forms and timely submit them to the correct people at each stage of the process, as outlined in the Grievance Process. *Id.*

Christina Conyers is the grievance specialist at PCF. *Id.* at ¶ 2. She oversees the Grievance Process and has access to grievance records at PCF. *Id.* at ¶ 3. Based on Ms. Conyers's review of Mr. Aaron's grievance records, Mr. Aaron filed three formal grievances regarding separate alleged incidents that took place on October 3, 2019. *Id.* at ¶ 26.

With respect to the excessive force incident, Mr. Aaron submitted an offender grievance form on October 18, 2019. Dkt. 29-4 at 11. The grievance describes the incident and states, "Ive been asking to talk to somebody about this and havent talked to nobody yet. I keep getting my (First Step) formal grievance back saying there investigation this matter. But nobody has come and gotten my side of the story, so how is this a investigation without talking to me." *Id.* Ms. Conyers returned the grievance on October 29, 2019 because Mr. Aaron failed to fill out the form completely and failed to indicate he had tried to informally grieve the incident and include evidence of the attempt. *Id.* at 10. The form also indicated, "If you have tried to resolve [the complaint] informally, please fill out the grievance form to indicate that. If you have not tried to resolve it informally, you have five (5) days to begin that process." *Id.*

Mr. Aaron states that he attempted to exhaust his remedies but was thwarted by prison administrators.[1] He includes amongst his exhibits a "request for interview" form, dated October 6, 2019, directed at Lt. C. Cooperider describing the assault; nothing is written in the section "Action:," indicating Lt. Cooperider did not receive the request for interview or did not respond to it. Dkt. 36-1 at 6. Mr. Aaron designates no evidence, nor does he argue, that he attempted to refile the grievance within five days of Ms. Conyers' response to demonstrate his attempt at an informal resolution. Rather, he highlights his other efforts to alert prison officials to the excessive force incident. On October 10, 2020, he sent a letter regarding the incident to Ms. Lightfoot at the IDOC Central Office. *Id.* at 9–11. On October 17, 2019, IDOC Executive Director Michael Osburn responded, stating the information was forwarded to the "I&I Department" and he could not

---

[1] The defendants argued that Mr. Aaron failed to comply with the Fed. R. Civ. P. 56(c) and Local Rule 56-1(b) by not citing to the record or including a section labeled "Statement of Material Facts in Dispute." Dkt. 35 at 2–5. While true that Mr. Aaron's initial reply, dkt. 35, did not comply with these rules, Mr. Aaron sought and received an extension of time to file his reply, dkts. 32 and 33, and subsequently filed a response, exhibit, and affidavit in compliance with the rules, dkts. 36, 36-1, and 37. Accordingly, the Court considers Mr. Aaron's materials in issuing its ruling.

4

respond further pending investigation. *Id.* at 12. Mr. Aaron also submitted a request for health care and wrote a letter to Aaron Smith, who he describes as "'Title' Appeal Person Etc.," in which he recounted the incident. *Id.* at 3–5, 14; dkt. 36 at 3.

With respect to his retaliation claim,[2] Mr. Aaron filed a grievance on September 24, 2019. Dkt. 36-1 at 1. He stated that on August 30, 2019, he submitted a healthcare request form because he was suffering from mental health issues and was not eating. *Id.* Lt. Cooperider read the request and issued Mr. Aaron a conduct report for participating in a hunger strike. *Id.* Mr. Aaron was found not guilty of the offense. *Id.* This grievance was rejected because (1) it was filed too late without reason shown for the delay, (2) Mr. Aaron failed to informally grieve the issue, and (3) he did not show he was personally affected by the action he described. *Id.* at 2. Mr. Aaron took no further steps to grieve this issue. Dkt. 29-4. Mr. Aaron stated that he did not file the grievance on time because he was waiting for a response to his request for interview from Lt. Cooperider. Dkt. 37 at ¶ 7.

With respect to the Grievance Process at PCF, Mr. Aaron argues that continuous lockdowns made it impossible for him to timely file grievances. Dkt. 37 at ¶¶ 8–12. He states that when the cellblock is locked down, an inmate must request a grievance form from the unit team manager when he does a weekly walkthrough, and then the manager sends the inmate the form through the mail. *Id.* at ¶¶ 8–10. He argues that Ms. Conyers is aware of this situation and uses it to her advantage by consistently denying grievances for being out of time. *Id.* at ¶¶ 10–12.

---

[2] The defendants argue that Mr. Aaron filed no grievances related to his retaliation claim. Dkt. 30 at 7. However, the Court believes that Mr. Aaron sufficiently alerted the prison to the issue when he filed the grievance on September 24, 2019.

### III. Discussion

The defendants argue that Mr. Aaron failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before he filed this lawsuit. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

It is the defendants' burden to establish that the administrative process was available to Mr. Aaron. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The undisputed designated evidence shows that Mr. Aaron failed to complete the Grievance Process. His excessive force grievance was rejected because he did not include evidence of his attempts to informally resolve the issue. Mr. Aaron was provided time to remedy this deficiency but failed to do so. His retaliation grievance was rejected for failure to informally

6

resolve the issue and for being filed too late. Mr. Aaron never filed any formal appeals concerning either grievance.

Mr. Aaron alleges that the Grievance Process was unavailable to him because he was unable to quickly access the grievance forms due to his cellblock lockdown. While a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Here, the grievance forms provide, "[y]ou have submitted the form too late and have not shown any good reason for the delay," *see, e.g.* dkt. 36-1, indicating that the grievance specialist has the discretion to accept a late grievance if the inmate shows good cause. Within the Grievance Process, Mr. Aaron never attempted to explain his late grievance filings or appeal his grievance rejections on the basis that they were submitted late due to lack of access to the forms. Dkt. 29-4. Instead, he tried to contact parties outside of the Grievance Process to express his concerns. But grievances must be filed "in the place, and at the time, the prison's administrative rules require," making these efforts ineffective at completing the Grievance Process. *Pozo*, 286 F.3d at 1025.

Accordingly, the defendants have designated uncontradicted evidence that Mr. Aaron failed to exhaust the administrative remedies available to him at the time he filed this complaint. Although Mr. Aaron attempts to excuse his lack of compliance with the Grievance Process by arguing he had inconsistent access to forms, he never attempted to appeal the denials on that—or any other—basis. Accordingly, the defendants' motion for summary judgment is granted.

## IV. Conclusion

As explained above, the defendants have demonstrated that Mr. Aaron failed to exhaust the administrative remedies available to him before filing this lawsuit. The consequence, in light of § 1997e(a), is that this action should not have been brought and must now be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice").

The defendants' motion for summary judgment, dkt. [29], is **granted**. This action is **dismissed without prejudice**. Final judgment shall now issue.

**SO ORDERED.**

Date: 2/17/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DESMOND AARON
999062
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Brandon Carothers
INDIANA ATTORNEY GENERAL
bcarothers@atg.in.gov

Thomas Joseph Flynn
INDIANA ATTORNEY GENERAL
tom.flynn@atg.in.gov